3-18-0344. People in the state of Illinois, Appalee v. Angela Wells, Appellant. Mr. Krieger, are you ready to proceed? I am, Your Honor. Good afternoon. My name is Jonathan Krieger. I'm here on behalf of Angela Wells. May it please the Court. This case involves Section 2-1401b-5, a law designed to give five statutory showings. The statute reflects important findings and values that domestic violence is a serious problem, that a defendant's status as a victim of domestic violence can be mitigating, and that a defendant might not intuitively know that mitigating value. The statute applies to my client, Angela Wells. Angela was the victim of domestic violence at the hands of her husband for a decade and beyond. This history provides important mitigating context supporting reducing her sentence from 40 years. Many of the showings in the statute are not disputed. This afternoon, I wanted to discuss the remaining showings and the procedural objections raised by the state. In this appeal, the state does not dispute Angela's history of being abused. Her husband, Ronald, beat her, held a gun to her head, verbally abused her, threatened her, and tried to isolate her. This history of domestic violence should cause a re-evaluation of her first-degree murder of the victim here, Jamie Weirich, only after Ronald, against her wishes, brought Weirich to the home and stabbed him so much that everyone thought that he was dead. In her petition, Angela aversed that she killed Weirich out of fear of violence and threats from Ron. This makes perfect sense. If Angela let Weirich escape, she could expect violent, possibly deadly retaliation from Ronald. This does not justify her conduct, but it does mitigate her ability. Ronald's history of violence would make Angela hyper-vigilant, seeing danger from Ronald, even in his absence, based on his inevitable return. This context does not diminish Weirich's suffering and death, but it shows that he was not the only victim. Before this, my client had no felonies, only misdemeanor convictions for possession of cannabis and drug paraphernalia, but she still received a 40-year sentence. The evidence of Ronald's extensive abuse would likely result in a lower sentence. The state argues that this claim isn't cognizable because the petition was filed in 2017 to attack a 2001 conviction. The state frames this in terms of retroactivity, but I don't think that that's the right frame. The petition was filed, the effective date was January 1, 2016, and was filed in December 2017, so it falls within the petition. I think the real question is whether a timely petition can reach older judgments, judgments as old as the one in this case. The state points to the two-year limit on claims under section 214.01, but as we've argued, that limit is paused when a petitioner is under a legal disability, and my client was under such a disability. She could not file a petition under this provision until the provision was passed, and once subsection B-5 was passed, that disability was removed, and Angela filed her petition within those two years. Since she's satisfied the showings of subsection B-5, she should be allowed to withdraw her guilty plea. Minimally, we would ask that this case be remanded for further proceedings, given the conceded due process violation in the ruling below. Does anyone have any questions for Mr. Krieger? I don't see any questions at this time. With that, Mr. Atwood, are you ready to proceed? I am, Your Honor. Thank you. Good afternoon, Your Honors, Counsel. My name is Nicholas Atwood, and I represent the people of the state of Illinois in this matter. As the defendant has pointed out, she raised her petition under section 214.01B-5. That petition, first, I guess I should back up and say, in People v. Stoker, our Supreme Court has determined that these types of due process violations, such the early dismissal of the defendant's petition without providing her with an opportunity to respond to the state's motion, are subject to harmless error analysis. And there was no error in this case, much less, if there was error, it was harmless. The first argument that defense counsels proffered is that she was under a legal disability such that section 214.01C, the timeliness requirement, would be accepted. However, the case the defendant cites, it's in re marriage of Vanek, that is not the legal disability that 214.01C is considering. If you look at Vanek, first of all, the legal disability that was discussed was only discussed in dicta. It wasn't an official holding. And no other case has cited Vanek for that proposition, despite that case being nearly 30 years old. The statute on statutes defines a legal disability, and it defines it in terms of a mental illness, a loss of faculty by the petitioner, even subject to potentially drug abuse. And if you look at a number of cases citing legal disability in the context of a 214.01 petition, there's Morgan v. People, that's 16 ILL.2D.374. That case held that imprisonment is not a legal disability. Spoto v. Raybourn, 32 ILAP3RD.913, mental illness is a disability. Mills v. McDuffa, 393 ILAP3RD.940, requiring clear proof of a mental illness to accept the timeliness requirements of 214.01C. The legal disability that counsel is referring to is legal in a different context, a different type of disability, and one that's not currently recognized by this court. If this court were to adopt defendant's reading of a legal disability, it would completely eradicate the timeliness requirement of 214.01C, merely because a law hasn't been written that would be favorable to a defendant. Moreover, what would you call, Mr. Atwood, what would you call an inability to plead a statute that didn't exist? Well, in this case, I would call it a disadvantage, but not a disability. If we look at People v. Guerrero as an Illinois Supreme Court case, and it says that defendants are required to bring all claims regardless of whether the law is in favor of them or not. If we look at prior common law, I cited People v. Smith in the brief, it was a 1993 case in which a mother had fed caustic acid to her child, which ended up resulting in the child's death in an effort to obtain a fraudulent products liability suit against a baby food manufacturer. The defendant in that case did raise domestic abuse as a mitigating factor at her sentencing. At her original negotiated plea, defendant was represented by counsel. She was not pro se, which makes counsel's reference to her only having a great education really irrelevant. It wasn't considered by her at that time because she wanted to get the best deal that she could, and so she agreed to testify against her husband. The fact of the matter is there was precedent that she could have cited, and she could have cited this earlier abuse in mitigation. Moreover, it's important to consider 214.01C is attacking judgments that are less than two years old. It doesn't allow for a petition to be brought when a new law has been created within the past two years. So that's, first of all, 214.01C is just not a vehicle for that. The B-5 procedural vehicle is specifically designed to fall under the two-year timeliness requirement of 214.01C. We can see that from the plain language of the statute, which did not create a savings clause, and also by the comments of representative Mitchell, which counsel seeks to discredit by just stating he's simply one legislator, but he's actually the house sponsor of that bill. He's also on the judicial committee in the legislature, and he's on the criminal law subcommittee. The fact of the matter is... Would you agree that battered women are operating under duress? Of course, in certain circumstances, they are. It's a the literature discusses it, as we all know, and isn't duress one of the exceptions under 1401C for the running of the two years? It can be a factor to discuss, but here a defendant did not allege that she was under duress at the time, and the facts show that her husband wasn't even... She wasn't given an opportunity to amend either, was she? Well, at the time that she entered into her plea, she was allowed to argue that she had acted under, you know, some extraneous pressure, but duress was just simply not available to her as a defense in this case. With regard to this, in that context, I don't think that the type of duress that's being considered is the type of duress that would suffer from domestic battery, only in the context of you need to be under immediate duress that's preventing you from bringing the petition. Not duress when you committed the crime, but duress that prevents you from bringing the petition. The defendant had 20 years before she filed the petition to bring it, and she never did, so I think duress can be considered, but it's the wrong context to duress under this defendant's facts, and as I was saying, Representative Mitchell said in his statements in the third debate that this law was intended for to go back for two years with the judgments of these individuals and to give some of these women the opportunity to come to grips with how domestic violence may have affected them and may have caused them to be more culpable than they otherwise would have been, but this was not written to give every defendant for all time that could have potentially been a victim of domestic violence an opportunity to bring that claim now. It still has to be within the two-year time limitation, and we can get further insight on that fact from the B-10 subsection, which deals with postpartum depression. Now, when the legislature amended 214-01 the very next year with the subsection on postpartum depression, it specifically wrote a savings clause into the law that accepted it from the 214-01c requirement. I think it's clear based on the plain language, the intent of the law, and the subsequent similar law that deals with similar subject matter that this was not intended to allow every defendant to raise these claims, and also even if this court found that that was the case, it's also not a retroactive statute in the sense that while 214-01b-5 is procedural, the law that it's addressing is the mitigating factor in subsection A-15. That's a substantive law, and therefore it's not considered retroactive under the case law because it's not dealing simply with a procedural law. 214-01 is simply a procedural vehicle. The real law that is at issue here is the A-15 law, considering domestic violence as a mitigating factor, which is substantive in nature. But even if this court found that this was a retroactive statute, the defendant's claim is also, the trial court's dismissal is also harmless because the facts of this case show that she can't satisfy subsection B-54 or subsection B-55. B-54 deals with the unawareness of the mitigating nature. As I touched on earlier, prior defendants in previous cases in this state have used domestic violence as a mitigating factor. Ignorance of the law is no excuse in this case, so she would also legally be aware of that even if she did not raise that claim. And with regard to B-5, there's no chance the trial court would have reduced the defendant's sentence in this case when we consider the actual facts of it. As I mentioned, the defendant's husband came home. She brought the victim with him. He stabbed him over a $200 dispute, and the victim helped cover up the body initially. She took him down to the basement, placed him in an unplugged freezer, and left him there. Ronald then left for several hours, leaving the defendant home with the body. The victim stirred, and in a rather gruesome manner, the defendant took a hammer and a knife and bludgeoned and stabbed the victim to death, put him back in the freezer, and then shockingly asked her 13-year-old stepson to sit on the door of the freezer to hold it down while they waited for the victim to die. And if that wasn't bad enough, she took his money from his ATM card and then helped Ronald later conceal the body by burying it in the backyard. There were numerous opportunities during that several hours where the defendant could have sought help for the victim. She could have called the police, who would have then protected her from any further threat against Ronald. But she chose not to do so, not just because she was afraid of domestic violence, but because she was in this for the gain of the money, and also she wanted to get away with the crime. That's why she acted the way she did, not because at some earlier point she may have been victimized. And on that point, the defendant in her reply brief seemed to imply that the state has a lack of deference for victims of domestic violence, and nothing could be further from the truth. The state finds domestic violence to be a blight on society, and we bring to justice people who commit domestic violence against others. The mere fact of this case is we're not debating whether or not domestic violence occurred. We're debating whether or not this defendant can avail herself of section 214.01b.5, and the plain language of the statute says that she cannot because her judgment is simply far too old to fall under that provision. And so with that, one final note, defendant also asked to have her plea vacated. She cited People v. Shaw and People v. Reed, which was a fourth district case at the time defendant filed her brief. It's since been ruled on by the Supreme Court, and the Supreme Court has indicated that 1401 is a vehicle to get to a motion to vacate a guilty plea or motion to withdraw a guilty plea. However, it's in a limited context of an actual innocence claim. So even if this court were to disagree with all the various reasons the state has proffered as why this opinion or why this petition should have been dismissed, the only available remedy is a limited remand simply to allow the defendant the opportunity to reply to the state's motion to dismiss. And if your honors have no further questions, the state would ask that the trial, that this court affirm the trial court's dismissal of defendant's petition. Thank you. Are there any other questions? No other questions. Mr. Krieger for rebuttal. Thank you. I have four points. First of all, opposing counsel brings up the ATM card that my client supposedly took from the victim. Opposing counsel finds that in the court decision from Ronald Wells's, this wasn't in the record directly below. And from that context, it appears that the wallet was taken before he was placed in the freezer. So the idea that this was the motive that he was, Mr. Weyrich was killed for pecuniary gain is not supported at all by the record. The record overwhelmingly shows that she did this because she was afraid of her husband, not of Mr. Weyrich, but of her husband coming back and retaliating. She says in one of her exhibits that she was afraid that the fate of, she would have the same fate as Mr. Weyrich. The second point I have is opposing counsel argues that the VANAC decision is, the holdings that we cite from the VANAC decision is dicked. And that's just not true. In that case, the question was whether the petition was filed within two years, the court went through the U.S. Supreme Court case, and then the legislature, legislation that had overturned that case. It was absolutely crucial to deciding whether it was timely file. So it is binding precedent on that point. And although it hasn't been cited since then, it is nonetheless precedent. And to be honest, the opposing counsel doesn't argue that it's wrongly decided. As Justice Doherty alluded to, the definition of opposing counsel would have it. And I guess that would be my third point, which is that because the case was basically short circuited, it didn't allow my client to respond to the state's motion to dismiss. And that would be a good reason if this court does not vacate my client's guilty plea to send it back. It would show that the error in this case was not harmless. That would be a reason to remand it for further proceedings in the section 214-01. And there is actually evidence of duress and disability. Even after the crime, we cited a number of collateral filings that were either filed by Ronald, her abuser. Sometimes he even signed them himself. So he controlled her legal proceedings up through, I believe, 2015. So he continued to have an abusive relationship with her after the crime. And you can see it, I don't want to repeat the words that he said, but you see it in the exhibits she attached. He was very verbally abusive to her then. So I think that would be certainly relevant evidence in terms of determining whether she was under duress or under disability and not filing the to raise substantive change to the list of mitigating factors under 815. And that's not true. As I point out in the reply, they have different standards. And one, 815, the mitigating factors apply going forward, but the subsection B-5 can reach back. So we would ask your honors to remand to allow my client to withdraw her guilty plea or in the alternative to remand for further section 214 proceedings. Thank you, Mr. Krieger. Are there any final questions for Mr. Krieger? No, no. If not, thank you both for your arguments here today. This matter will be taken under advisement and the written decision will be issued to you as soon as possible. And with that, I believe we are finished until we're adjourned until March. So thank you all.